Tagged for publication



**ORDERED in the Southern District of Florida on August 8, 2014.**

John K. Olson, Judge
United States Bankruptcy Court

_____

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**FORT LAUDERDALE DIVISION**

**In re: DocAssist, LLC,**                                        Case No. 14-27625-JKO
                                                                 Chapter 11

       **Debtor.**

_____

### <u>ORDER OF ABSTENTION AND DISMISSAL UNDER 11 U.S.C. § 305(a)</u>

This Chapter 11 case was filed August 4, 2014, and came before the Court on August 7,

2014, on a series of first day emergency motions [ECF Nos. 3, 4, 7, 8, and 13] filed by the Debtor,

together with an emergency motion to dismiss [ECF 23] and responses [ECF Nos. 24, 25 and 26]

to three of the Debtor's emergency motions, all filed by minority members of the Debtor limited

liability company, Rolando and Alex Barberis (the "Barberis Brothers" or the "Minority Members").

Also before the Court is the objection [ECF 27] filed by the United States Trustee which objects to

the Debtor's application [ECF 3] to retain Tripp Scott, P.A., as the Debtor's counsel, on the grounds

that the firm is not disinterested within the meaning of 11 U.S.C. § 101(14), as required by 11 U.S.C.

§ 327(a).[1]

This is a two party governance dispute between majority (the "Majority Members") and the Minority Members of the Debtor LLC. The dispute has been litigated to judgment in the Circuit Court for Miami-Dade County. In an Order [ECF 23-6, Exhibit F] entered September 6, 2013, then Circuit Judge Beth Bloom[2] determined that the Barberis Brothers owned 33.84% of the equity member interests in the Debtor, and that various LLC governance actions taken by the Debtor between March 2010 and December 2011 were "invalid and void *ab initio.*" Judge Bloom ruled that the LLC's First Amended Operating Agreement, as amended on March 31, 2010, is "the effecting and controlling operating agreement of Docassist, LLC and the members." Judge Bloom's ruling was affirmed by the Third District Court of Appeal on July 23, 2014. [ECF 23-7, Exhibit G].

Proposed counsel for the Debtor argued at the hearing that because Judge Bloom had issued a stay of her Order pending issuance of a Mandate from the District Court of Appeal, which had not issued as of the petition date, that the decisions of Judge Bloom and the Court of Appeal were of no effect on the management of the Debtor. Thus, counsel argued, the Debtor was free to file its petition notwithstanding the objection of the Barberis Brothers.

The Court rejects this argument for two primary reasons.

The first is that federal courts are not free to overrule decisions of state courts under the *Rooker-Feldman* doctrine, which applies to "cases brought by state-court losers complaining of injuries cause by state-court judgments rendered before the district court proceedings commenced

---

[1]Because of the dismissal of this case, the Court is not required to rule upon the Debtor's Application or the U.S. Trustee's objection, but notes that the objection is compelling.

[2]Judge Bloom now serves as a United States District Judge for the Southern District of Florida, with duty station in Fort Lauderdale.

and inviting district court review." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.,* 544 U.S. 280, 284-86 (2005); *see Bates v. Harvey,* 518 F.3d 1233, 1241 (11th Cir. 2008). Federal trial courts "lack[] jurisdiction to review, reverse, or invalidate a final state court decision." *Harper v. Chase Manhattan Bank,* 138 F.Appx. 130, 132 (11th Cir. 2005) (citation omitted). Here, the Debtor is attempting to undo the decisions[3] of the State Courts which have invalidated LLC governance changes  adopted to extinguish the Barberis Brothers' equity interests in the Debtor. Such action by the Debtor would "effectively nullify" the State Court judgment and cannot be permitted. *Alvarez v. Attorney General for Fla.,* 679 F.3d 1257, 1262-63 (11th Cir. 2012).

Second, the Debtor is collaterally estopped by the State Court judgment from re-litigating corporate governance issues before this Court. Collateral estoppel "has the dual purpose of protecting litigants from the burden of relitigating an identical issue with the same party or his privy and of promoting judicial economy by preventing needless litigation." *Parklane Hosiery Co. v. Shore,* 439 U.S. 322, 326 (1979) (citation omitted).

The Eleventh Circuit has explained that "[i]f the prior judgment was rendered by a state court, then the collateral estoppel law of that state must be applied to determine the judgment's preclusive effect." *St. Laurent v. Ambrose (In re St. Laurent),* 991 F.2d 672, 675-76 (11th Cir. 1993). Under Florida law, collateral estoppel applies if "1) the identical issues were presented in a prior proceeding; 2) there was a full and fair opportunity to litigate the issues in the prior proceeding; 3) the issues in the prior litigation were a critical and necessary part of the prior determination; 4) the

---

[3]The Eleventh Circuit applies *Rooker-Feldman* only when "the prior state court ruling was a final or conclusive judgment on the merits." *Amos v. Glynn County Bd. of Tax Assessors,* 347 F.3d 1249, 1265 n.11 (11th Cir. 2003). This Court concludes that the State Court judgment here was final under the *Amos* test notwithstanding the fact that the Third District Court of Appeal had yet to issue its mandate as of the petition date.

parties in the two proceedings were identical; and 5) the issues were actually litigated in the prior proceeding." *Lozman v. City of Riviera Beach, Fla.,* 713 F.3d 1066, 1078-79 (11th Cir. 2013) (citations omitted).

The issue of the ability of the Majority Members of the LLC *vel non* to act on Major Decisions (as defined in § 6.02 of the First Amended Operating Agreement) without supermajority consent has been decided in the State Court judgments, and each of the other factors required by *Lozman* are present here. Indeed, organizational changes attempted by the Majority Members of the LLC in derogation of the Barberis Brothers' rights and interests have been held "invalid and void *ab initio.*"

The First Amended Operating Agreement provides, in relevant part, that the Debtor cannot take various "Major Decisions" without "the approval of sixty-six and two-thirds percent (66.67%) of the Member Interests of the Company." [ECF 23-2, Exhibit B, p. 2]  The Barberis Brothers own 33.84% of the Member Interests and, under the First Amended Operating Agreement, no "Major Decision" of the LLC can be taken over their objection.

Although proposed counsel for the Debtor contends that the filing of a Chapter 11 Petition is not a "Major Decision" under the terms of the First Amended Operating Agreement,[4] there is no doubt that the borrowing of more than $25,000 is a "Major Decision."  In the Debtor's Emergency Motion [ECF 7] to Authorize Post-Petition Financing, etc. (the "Financing Motion"), it seeks to

---

[4]The notion that the filing of a Chapter 11 Petition is not a "Major Decision" for an LLC flies in the face of reality, and can only be the result of a hyper-technical textual analysis entirely divorced from common sense. Because the Financing Motion [ECF 7] discussed below is manifestly a "Major Decision" requiring two-thirds consent, the Court is not required to determine whether the filing of the Debtor's Chapter 11 Petition is a "Major Decision" under the First Amended Operating Agreement, however implausible it is to assert that such a decision is not.

4

borrow $100,000 from its largest equity owner, Mark Landis,[5] on a superpriority administrative expense basis under 11 U.S.C. § 364(c).  According to the Financing Motion, Mr. Landis has made pre-petition loans to the Debtor "over $3,792,000."  The Financing Motion states that without the Landis $100,000 new loan, "the Debtor's operations will be permanently damaged and Debtor will lose significant value as a going concern." [ECF 7, p. 4].  The Debtor thus contends that the proposed borrowing is an essential element of the Chapter 11 filing and a *sine qua non* to its reorganization.

Although $100,000 is manifestly over the $25,000 threshold requiring two-thirds Member consent set forth in Section 6.02 of the First Amended Operating Agreement, proposed counsel for the Debtor insists that on a post-petition basis, the LLC governance provisions contained in the First Amended Operating Agreement simply become inapplicable.  In this construct by proposed counsel for the Debtor, "the Debtor" is free to exercise its business judgment notwithstanding the supermajority requirements of Section 6.02, subject only to review and consent by the Court.  This is nonsense. A Chapter 11 debtor is not free to act in a manner inconsistent with its governing documents, and the filing of a Chapter 11 Petition does not operate to nullify or void regular corporate (or LLC) internal governance constraints.

Applicable non-bankruptcy law determines whether authority exists for a particular debtor to commence a voluntary bankruptcy case. *Price v. Gurney,* 324 U.S. 100 (1945).  Accordingly, because the Debtor is a Florida LLC, its authority to file a Chapter 11 petition is governed by Florida law.  Voluntary petitions on behalf of corporations must be authorized by general corporate law,

---

[5]Judge Bloom determined that Catalyst Partners, LLC, an entity which the parties agree is owned or controlled by Mr. Landis, owns 48% of the Member Interests in the Debtor LLC.

5

typically by majority vote of its board of directors, *"unless the act of a greater number is required by the articles of incorporation or the bylaws. § 607.121 Fla.Stat. (1983)."* *In re Minor Emergency Ctr. of Tamarac, Inc.,* 45 B.R. 310, 311 (Bankr. S.D. Fla. 1985). The Florida General Corporation Act, *Fla. Stat.* § 607.121, held applicable in *Minor Emergency Ctr.* has been repealed and effectively replaced by *Fla. Stat.* § 607.0824, which provides that "[i]f a quorum is present when a vote is taken, the affirmative vote of a majority of the directors present is the act of the board of directors unless the articles of incorporation or bylaws require the vote of a greater number of directors."

The Florida Limited Liability Companies Act is to the same effect: "In all matters in which a vote is required, a vote of a majority-in-interest of the members shall be sufficient unless provided otherwise in the limited liability company's articles of organization or operating agreement or this chapter." *Fla. Stat.* § 608.4231(3)(b) (2014). The Debtor's First Amended Operating Agreement does "provide otherwise," and requires a supermajority vote for "Major Decisions." The Debtor's contention that this requirement evaporates after the filing of a Chapter 11 Petition has no basis in applicable Florida law, and no provision of the Bankruptcy Code provides for a different result.

It is clear from the Chapter 11 Small Business Plan [ECF 2] filed by the Debtor that its (or more accurately, its Majority Members') goal is to accomplish exactly the kind of equity restructuring which the Majority Members of the LLC sought but failed to accomplish in the State Court litigation before Judge Bloom: the elimination of the Barberis Brothers' interests in the LLC. The methodology for this in the proposed Plan is to extinguish all existing equity interests in the LLC and to convert loans made to the Debtor into all of the equity in a reorganized LLC. Mr. Landis' $3.8 million in loans would make him the overwhelming equity owner. This would all be accomplished without any vote of the equity interests (read: Barberis Brothers), all of which would

6

be extinguished.

There is no secured debt in this case.  Under the proposed Plan, general unsecured creditors would be paid in full, with 50% paid in six months and the remaining 50% paid in 12 months.[6]  The singular purpose of this Chapter 11 case is to accomplish the elimination of the Barberis Brothers' equity interests in the Debtor,  a naked attempt to avoid the governance determinations by the State Court.  There is accordingly no economic need or purpose for this Debtor to be in Chapter 11.  Because the case is merely a two-party dispute, the Court will abstain from the case.  The parties can resolve their disputes in state court.

For the foregoing reasons, the Court hereby:

1.      **ABSTAINS** from this case pursuant to 11 U.S.C. § 305(a).

2.      This case is **DISMISSED** with prejudice to the filing of a case by the Debtor under any chapter of the Bankruptcy Code in any judicial district in the United States for a period of 180 days from the date of this Order.

3.      All pending motions and applications are **DENIED** as moot.

### 

---

[6]General unsecured creditors are thus technically impaired and would have the right to vote.  Those who have made loans to the Debtor, chief among them Mr. Landis, are also impaired, since their debt would be converted into equity, and they would also have the right to vote.